**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE 1978 PIPER CHEROKEE AIRCRAFT, TAIL NO. N 5538V, INCLUDING ITS TOOLS AND APPURTENANCES, Defendant,**

**Perry A. McCULLOUGH,**
**Claimant–Appellant.**

No. 92–15350.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1994.

Decided Sept. 30, 1994.

Richard F. Cornell, Reno, NV, for the claimant-appellant.

Thomas E. Flynn, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before: POOLE, CANBY, and RYMER, Circuit Judges.

Opinion by Judge CANBY; Concurrence by Judge RYMER.

CANBY, Circuit Judge:

Claimant Perry McCullough appeals the district court's grant of summary judgment to the United States in this civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(4). He asserts that the district court never gained *in rem* jurisdiction in this action because the *res* never was brought within its district. He also asserts: that the judgment must be reversed because the government lacked probable cause to initiate the action; that the government is promissorily

estopped from seeking the civil forfeiture; that the government did not provide him constitutionally sufficient notice of the action; and that the forfeiture violates the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

We reject McCullough's challenge to the district court's jurisdiction. We also reject most of McCullough's other assignments of error, but reverse the summary judgment in favor of the government on the ground that this civil forfeiture proceeding is barred by the Double Jeopardy Clause of the Fifth Amendment to the extent that it is predicated upon crimes for which McCullough already has been tried. We remand to the district court for a determination whether the forfeiture can be predicated upon any criminal conduct for which McCullough has not been tried. If so, we leave it to the district court to consider McCullough's excessive fines challenge in the first instance.

## BACKGROUND

McCullough was indicted on June 23, 1989 in the Eastern District of California (Eastern District) for numerous drug-related offenses, including conducting a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848. The indictment contained a forfeiture provision alleging that several items of McCullough's property, including the aircraft that is the subject of this action, were subject to criminal forfeiture as provided in 21 U.S.C. § 853. On the same day the indictment was received, the government obtained from the Central District of California (Central District) a warrant for seizure of the aircraft pursuant to 21 U.S.C. § 881(b), and it immediately seized the aircraft. In December 1989, the government initiated this

civil forfeiture action under 21 U.S.C. § 881(a)(4) in the Eastern District, where the criminal charges were still pending.

McCullough filed a verified claim in the civil forfeiture proceedings as provided in Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules to Federal Rules of Civil Procedure, 28 U.S.C., hereinafter "Supplemental Rules").[1] He later filed an answer to the government's complaint as required by the Rule. The district judge who presided over both the criminal and civil actions stayed the civil proceedings pending the outcome of the criminal trial.

The jury in McCullough's criminal case returned a verdict of guilty on all counts. The jury also returned a verdict of forfeiture against the aircraft. Judgment of conviction and forfeiture was entered accordingly.

Following the successful criminal prosecution and forfeiture, the government resumed prosecution of the civil forfeiture action to perfect its title to the aircraft against potential third-party claimants.[2] The government moved for summary judgment, and the district court granted the motion on the ground that no genuine issues of material fact exist as to the elements necessary to establish the civil forfeiture.

## I. JURISDICTION

McCullough contends that the United States District Court for the Eastern District of California never obtained jurisdiction over this civil forfeiture action because the aircraft never was brought within the geographic confines of, or "arrested" in, the Eastern District. He asserts that the location of the *res* within the geographical boundaries of the

---

**1.** McCullough's parents also filed verified claims but took no further action in the proceedings. The district court eventually entered a default against McCullough's parents.

**2.** The government candidly admits its reasons for returning to the civil proceedings instead of perfecting its title pursuant to the criminal forfeiture statute's procedure for handling third-party claims, 21 U.S.C. § 853(n). The government did so to preclude a possible claim of interest in the aircraft by McCullough's parents who had already defaulted their claim in the civil proceeding.

Since this appeal was filed, McCullough has successfully appealed his CCE conviction and the associated criminal forfeiture. *See United States v. McCullough*, Nos. 90–10577, 91–10581, and 92–10597, 1994 WL 369400 (9th Cir. June 13, 1994) (unpublished memorandum disposition). Consequently, this civil action now is necessary for the government to establish title to the aircraft in the first instance, not merely as a means of perfecting its title against third parties.

district at the initiation of a civil forfeiture action is a prerequisite for the exercise of *in rem* jurisdiction. We hold that, even if McCullough's contention is correct, recent congressional enactments clearly conferring jurisdiction upon the Eastern District are to be applied to this case, which was pending at the time of the enactments.[3]

Prior to October 1992, federal courts struggled with the questions whether a district court other than that in which the property was located could exercise jurisdiction over the subject of a forfeiture and could effectuate process against the property. *See United States v. Real Property Known as 953 East Sahara, Las Vegas, Nevada,* 807 F.Supp. 581, 583–85 (D.Ariz.1992) (discussing the questions and citing cases). The problems involved reconciling the provisions of several statutes dealing with jurisdiction, venue and service of process. *See id.* (discussing interplay between 28 U.S.C. § 1355, 18 U.S.C. § 981(h), 21 U.S.C. § 881(j), Supplemental Rule E(3)(a) and Fed.R.Civ.P. 4(f)).

In October 1992, however, Congress amended 28 U.S.C. § 1355, unifying the treatment of jurisdiction, venue and authority to serve process in civil forfeiture cases. Section 1355 now clearly confers jurisdiction over this action in the Eastern District. The section provides:

> (a) The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress....
>
> (b)(1) A forfeiture action or proceeding may be brought in—
>
>> (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or
>>
>> (B) *any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.*

· · · · ·

> (d) Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

28 U.S.C. § 1355 (emphasis added). The Eastern District has jurisdiction over this forfeiture pursuant to the italicized provision because venue for the proceeding in the Eastern District is provided for in 21 U.S.C. § 881(j) (venue lies in the judicial district in which the criminal prosecution is brought).

We have no difficulty concluding that the amendment to § 1355 applies to this case, which was on appeal at the time the amendment was enacted. *See Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994) ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."); *Republic Nat'l Bank of Miami v. United States,* —— U.S. ——, —— – ——, 113 S.Ct. 554, 565–66, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring). In *Landgraf,* the Court explained:

> Application of a new jurisdictional rule usually "takes away no substantive right but simply changes the tribunal that is to hear the case." Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties."

*Landgraf,* —— U.S. at ——, 114 S.Ct. at 1502 (citations omitted).

We are aware that the Tenth Circuit has declined to apply § 1355 "retroactively." *See United States v. 51 Pieces of Real Property, Roswell, New Mexico,* 17 F.3d 1306, 1312 (10th Cir.1994). The Tenth Circuit, however, did not have the benefit of the *Landgraf* opinion and its explicit rule regarding retroactive application of jurisdictional statutes. In addition, the Tenth Circuit had before it

---

**3.** Our disposition of this issue makes it unnecessary for us to consider the government's arguments that this issue is subject to waiver and that

McCullough waived it by not raising it in the district court.

the further question whether § 1355(d)'s service of process provision should be applied retroactively. *51 Pieces of Real Property*, 17 F.3d at 1312 ("Moreover, even if the provisions were otherwise retroactive, we doubt they could retroactively validate service of process that was invalid when executed."). In contrast, we need not determine whether the service provision of § 1355(d) is retroactive, or even whether service in this case was "invalid" because, as we determine in the next section, McCullough has waived any objections to service.

We follow *Landgraf*, then, and apply § 1355(b)(1)(B) to uphold the district court's jurisdiction despite the fact that the aircraft *res* was never physically brought within the boundaries of the Eastern District.

## II. SERVICE OF PROCESS

One remaining aspect of McCullough's challenge to the district court's *in rem* jurisdiction deserves mention. McCullough relied heavily on the language of Supplemental Rule E(3)(a), which provides that service of process *in rem* must be made within the district.[4] To the extent that McCullough's jurisdictional argument depends on this Rule, however, it is a defense of insufficiency of process that has been waived.

■ The Federal Rules of Civil Procedure apply to this action to the extent that they are not inconsistent with the Supplemental Rules. *See* Supplemental Rule A. Rule 12(h) of the Federal Rules of Civil Procedure provides that an objection to sufficiency of process is waived if not made in a

motion pursuant to Rule 12 nor in a responsive pleading. McCullough did not object to the method of service in the district court. Accordingly, he has waived any objections based upon the service of process.[5]

## III. PROBABLE CAUSE

■ McCullough next contends that, when the government initiated this action, there was no probable cause to believe that the aircraft had been used to facilitate drug transactions, as required by 19 U.S.C. § 1615.[6] We conclude that the government has shown that probable cause existed when it began this action.[7]

■ The standard for probable cause in forfeiture proceedings resembles that required to support a search warrant. *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir.1994). The determination of probable cause is based upon a "totality of the circumstances" test, and the government's evidence must be more than that which gives rise to a mere suspicion, although it need not rise to the level of prima facie proof. *Id.*

■ For the aircraft that the government seized to be subject to forfeiture, it must have been used to "transport or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances "manufactured, distributed, dispensed, or acquired" in violation of the law. 21 U.S.C. § 881(a). Under the totality of the circumstances, we conclude that the government established probable cause that the aircraft in question was so used.

---

**4.** The Supplemental Rules govern the seizure of the aircraft in this civil *in rem* forfeiture proceedings. *See* 21 U.S.C. § 881(b).

**5.** Because any challenge to service of process has been waived, we need not consider whether the amendments to 28 U.S.C. § 1355 retroactively validate service in this case. We also need not decide whether service was sufficient under the pre–1994 versions of Federal Rules of Civil Procedure 4(e) and (f) or was implicitly authorized by the venue provision of 21 U.S.C. § 881(j).

**6.** Section 1615 of Title 19 is applicable to this civil forfeiture under 21 U.S.C. § 881(d). *See United States v. Lot 4, block 5 of Eaton Acres*, 904 F.2d 487, 490 & n. 2 (9th Cir.1990).

**7.** The government in its brief urged us to consider instead whether it had established probable cause by the time that the summary judgment was entered. Since the filing of the briefs in this appeal, however, we have held that the requirement found in § 1615 that probable cause must be shown *"for the institution"* of forfeiture actions precludes consideration of post-filing evidence in making the probable cause determination. *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir.1994). Accordingly, in our *de novo* review of the determination of probable cause, we consider only evidence that the record discloses was developed prior to the institution of this action.

FBI Agent Jack Warren executed an affidavit in support of the seizure warrant issued by the Central District. In that affidavit, Warren described the following series of events: (1) In June 1989, McCullough flew a rented airplane to a California airport where he was met by a car registered to John Mack into which he loaded two suitcases from the rented airplane; (2) subsequent surveillance revealed that narcotics were being distributed from that vehicle; (3) the vehicle was occupied by Mack, McCullough and a person named Raphael Gonzalez; (4) they stopped at the residence of Vern Hayes; (5) subsequent searches at the residences of Hayes and Mack resulted in the seizure of several kilograms of cocaine; (6) McCullough, arrested the next day, was in possession of five kilograms of cocaine; (7) six months prior to these events, McCullough had flown his own plane (the subject of this action) to another California airport and had been met by Mack's automobile; (8) on that occasion, the aircraft remained on the ground for only fifteen minutes during which time two suitcases were transferred from the aircraft to the car. Finally, Warren attested that a reliable confidential informant had informed a U.S. Customs agent that he had personally "flown with McCullough in that aircraft on at least twenty occasions in which cocaine has been transported in that aircraft."

The Warren affidavit contains sufficient information to support a finding of probable cause that the aircraft was used to transport or facilitate the possession of illegal controlled substances. It is reasonable to infer that some portion of the cocaine seized during the searches of Mack's and Haye's homes and during McCullough's arrest was transported in the rented airplane in June. The earlier flight, made in McCullough's own aircraft, is sufficiently similar to the later flight to permit an inference that McCullough's aircraft also was used to transport or facilitate the delivery of illegal controlled substances. These inferences are bolstered by the information from the confidential informant, which is corroborated by the events

recounted in the affidavit. The government's showing suffices.

## IV. PROMISSORY ESTOPPEL

McCullough next asserts that the government is precluded from maintaining this action because it indicated in a status conference report that "[i]f the plaintiff United States is successful at the criminal trial and the airplane is forfeited criminally, plaintiff would move to dismiss this action, and would instead perfect its title to the airplane by following the procedures outlined in Title 21 U.S.C. Section 853(n)." We need not decide this issue because McCullough's criminal forfeiture has been reversed. *United States v. McCullough*, Nos. 90–10577, 91–10581, and 92–10597, 1994 WL 369400 (9th Cir. June 13, 1994) (unpublished memorandum disposition). The government's representation in the status report therefore could no longer preclude it from maintaining this action, even if that representation were binding on the government.

## V. NOTICE

 McCullough argues that the judgment of forfeiture must be reversed because the government failed to provide him notice *directly* while he was in the government's custody. He contends that this failure violated his right to due process. McCullough has waived this point, however, because he did not raise it in the district court. *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir.1991). Although we have discretion to review issues not raised below, we do so only in exceptional circumstances to prevent manifest injustice. *International Union of Bricklayers Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). There is no manifest injustice here. McCullough had actual notice; indeed, he filed a claim and answer in the action.[8] Accordingly, we decline to consider this issue.

## VI. DOUBLE JEOPARDY

 McCullough contends that because the government already sought to obtain a

---

**8.** This fact distinguishes *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), relied upon by McCullough. In that case, "[it was] undisputed that appellant, who remained in custody throughout the forfeiture proceedings, did not receive such notice until his release." *Id.* at 38–39, 93 S.Ct. at 30–31.

criminal forfeiture of the aircraft, and because the judgment of forfeiture in that case has been reversed, the Double Jeopardy Clause bars the government from now seeking a civil forfeiture. There no longer is any question that the civil forfeitures the government seeks to impose here, under sections 881(a)(4) and (a)(7), constitute punishment for double jeopardy purposes. *See United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1218–20, (9th Cir.1994).[9] Nor is there any question that this civil action is entirely separate from McCullough's previous criminal trial. *See id.* at ——, at 10467 ("a civil forfeiture action which is brought and tried separately from a criminal prosecution ... constitutes a separate "proceeding" [for double jeopardy purposes]"). However, it is unclear whether, in this civil proceeding, the government seeks to punish McCullough for the same offense for which he was criminally prosecuted.

 Two statutory offenses represent the same offense for double jeopardy purposes unless "each [offense] requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see also United States v. Dixon*, —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). Accordingly, unless the civil forfeiture under § 881(a)(4) can be predicated upon some offense other than those for which McCullough has already been tried, the civil forfeiture is barred by the Double Jeopardy Clause.[10] We remand to the district court to make this determination in the first instance, and to conduct any further proceedings that may follow from it.

## VII. EXCESSIVE FINES CLAUSE

The Supreme Court issued its decision in *Austin,* in which it concluded that

§§ 881(a)(4) and (a)(7) forfeitures are subject to scrutiny under the Excessive Fines Clause of the Eighth Amendment, after the district court rendered its decision in this case. In reliance upon that decision, McCullough contends that the forfeiture of his aircraft constitutes an excessive fine. Because it is unclear exactly what conduct, if any, may eventually provide the basis upon which the government can seek forfeiture of McCullough's aircraft on remand, we will leave the consideration of his excessive fines argument for the district court to resolve in the first instance. *Cf. Austin,* —— U.S. at ——, 113 S.Ct. at 2812 (remanding question whether forfeiture was excessive fine).

## CONCLUSION

In summary, we conclude that the district court has jurisdiction over this civil forfeiture action despite the fact that McCullough's aircraft never was brought within the geographical boundaries of the district. We also conclude that the Double Jeopardy Clause of the Fifth Amendment applies to civil proceedings seeking forfeiture of conveyances and real property under 21 U.S.C. §§ 881(a)(4) and (a)(7). Because those sections incorporate the elements of criminal offenses, forfeitures pursuant to them constitute a species of greater offenses with respect to the lesser-included offenses that form the bases of the forfeitures. Accordingly, this civil forfeiture action is barred as a successive prosecution unless the forfeiture can be predicated upon some criminal act for which McCullough has not been previously placed in jeopardy.

The judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

---

9. The district court, of course, did not have the benefit of our decision in *$405,089.23* at the time it entered summary judgment.

10. We express no view whether the civil forfeiture, even if not barred by the Double Jeopardy Clause, may run afoul of the Due Process Clause of the Fourteenth Amendment. *Cf. Sanchez v. United States*, 341 F.2d 225, 229 (9th Cir.1965) ("planned exposure of an accused to a succession of trials for offenses clearly subject to joinder, for

the deliberate purpose of enhancing the chance of conviction on weak evidence may well constitute fundamental unfairness"); *Tucker v. Makowski*, 883 F.2d 877, 880–81 (10th cir. 1989) ("successive trials arising from admittedly separate crimes, but stemming from the same criminal transaction [may violate an accused's right to due process] in the form of his right to be free of prosecutorial attempt[s] to wear out the accused by a multitude of cases with accumulated trials" (citations and quotations omitted)).

RYMER, Circuit Judge, concurring:

I fully concur in all of the opinion but Part VI on double jeopardy. I concur in that Part only because I am constrained to follow *United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir.1994). Otherwise, I believe that *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), controls, and that while forfeitures under § 881(a)(4) and (a)(7) may always constitute punishment, they are not always *only* punishment. In my judgment *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), doesn't say anything to the contrary as it was concerned simply with whether forfeiture serves *in part* to punish. The result I feel obliged to reach effectively transforms the "rare case" where *Halper* contemplates that double jeopardy will apply to civil proceedings, 490 U.S. at 449, 109 S.Ct. at 1902, into a commonplace occurrence, and may have other consequences for parallel civil and criminal proceedings which I find it difficult to believe that either the Congress or the Court had in mind. Nevertheless, I must concur.